No. 24-1383

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

ZACHARY HEBB,

Plaintiff-Appellee,

v.

CITY OF ASHEVILLE, NORTH CAROLINA and BEN WOODY, in his Official
Capacity,

Defendants-Appellants,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA- ASHEVILLE
DIVISION

_____

**BRIEF OF DEFENDANT-APPELLANTS CITY OF ASHEVILLE, NORTH
CAROLINA and BEN WOODY, in his Official Capacity**

_____

Eric P. Edgerton
Sr. Asst. City Attorney
N.C. Bar No. 47717
P.O. Box 7148
Asheville, NC 28802
Tele: (828) 259-5610
eedgerton@ashevillenc.gov

*Counsel for Defendant-Appellants*

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………………..iv

Jurisdictional Statement……………………………………………………………….1

Statement of Issues…………………………………………………………………….1

Statement of the Case………………………………………………………...…..1

Summary of Argument………………………………………………………………..3

Argument ……………………………………………………………………………..4

I. Standard of Review…………………………………………………………....4

II. The District Court Erred in Issuing a Ruling Which, If Affirmed, Would Create a New Circuit Split…………………………………………………………………4

III. The Challenged Ordinance Does Not Violate the Plaintiff-Appellee's First Amendment Rights…………………………………………………………………6

A. Section 10-85(2) of the City Code Furthers a Substantial Government Interest..7

B. Section 10-85(2) of the City Code is Narrowly Tailored………………………9

C. Section 10-85(2) of the City Code Leaves Open Ample Alternative Channels of Communication…………………………………………………………………...13

IV. The Challenged Ordinance is Not Unconstitutionally Vague………………...15

A. The Original Iteration of Section 10-85(2) Did Not Violate Due Process Requirements for Clarity………………………………………………………….16

B. The Amended Version of Section 10-85(2) Did Not Violate Due Process Requirements for Clarity………………………………………………………….18

Conclusion………………………………………………………………………...20

Request for Oral Argument……………………………………………………..21

Certificate of Compliance………………………………………………………21

Certificate of Service……………………………………………………...22

# TABLE OF AUTHORITIES

*Cases*

Am. Legion Post 7 of Durham, N.C. v. City of Durham, 239 F.3d 601 (4th Cir. 2001)……………………………………………………………………………7

Benjamin v. Sparks, 986 F.3d 332 (4th Cir. 2021)…………..…………………….4

Billups v. City of Charleston, S.C., 961 F.3d 673 (4th Cir. 2020)…7,8

Castaneda v. Perry, 95 F.4th 750 (4th Cir. 2024)…………..…………………5

Chapin Furniture Outlet Inc. v. Town of Chapin, 252 F. App'x 566 (4th Cir. 2007)………………………………………………………………………...19

City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)……………………….………………………………………12

Elhady v. Kable, 993 F.3d 208 (4th Cir. 2021)…………….…………………5

Folkes v. Nelsen, 34 F.4th 258 (4th Cir. 2022)………..………………………5

F.T.C. v. Ross, 743 F.3d 886 (4th Cir. 2014)…………….……..……………..5

Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)…………………………………………………………………..16

Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Env't Control, 317 F.3d 357 (4th Cir. 2002)……………………………………………………16

Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)…..8 and 9

Hooper v. People of State of Cal., 155 U.S. 648, 15 S. Ct. 207, 39 L. Ed. 297 (1895)……………………………………………………………………..17

Huntington Ingalls Inc. v. N.L.R.B., 631 F. App'x 127 (4th Cir. 2015)…………..5

Learning Network, Inc. v. Discovery Commc'ns, Inc., 11 F. App'x 297 (4th Cir. 2001)……………………………………………………..………………………1

Manning v. Caldwell for City of Roanoke, 930 F.3d 264 (4th Cir. 2019)………..16

Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 114 S. Ct. 2516, 129 L. Ed. 2d 593 (1994)……………………………………………………………………8 and 9

Medlin v. Palmer, 874 F.2d 1085 (5th Cir. 1989)…………………………*passim*

Medtronic, Inc. v. Lohr, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)…8

O'Connell v. City of New Bern, N. Carolina, 447 F. Supp. 3d 466 (E.D.N.C. 2020)…………………………………………………………….10, 11, 13 and14

Pine v. City of W. Palm Beach, FL, 762 F.3d 1262 (11th Cir. 2014)………..*passim*

Reeves v. McConn, 631 F.2d 377 (5th Cir. 1980)………………………...….12

Reynolds v. Middleton, 779 F.3d 222 (4th Cir. 2015)………………..……...7 and 8

Ross v. Early, 746 F.3d 546 (4th Cir. 2014)………………………9, 10, 13, and 15

Scott v. Baltimore Cnty., Maryland, 101 F.4th 336 (4th Cir. 2024)…….…………5

Shirvinski v. U.S. Coast Guard, 673 F.3d 308 (4th Cir. 2012)…………………….5

United States v. Hawley, 919 F.3d 252 (4th Cir. 2019)…………………………..17

United States v. Heyward, 42 F.4th 460 (4th Cir. 2022)…………………………..6

United States v. Santos-Portillo, 997 F.3d 159 (4th Cir. 2021)……………………5

United States v. Terry, 257 F.3d 366 (4th Cir. 2001)………………………………5

United States v. Williams, 553 U.S. 285, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)………………………………………………………………………...16

Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)……………………………………………..16

Wag More Dogs Liab. Corp. v. Cozart, 680 F.3d 359 (4th Cir. 2012)…..…..6 and 7

Wash. Energy Co. v. United States, 94 F.3d 1557 (Fed. Cir. 1996)………………6

Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)……………………………….……………………………..*passim*

*Statutes*

28 U.S.C. § 1291……………………………………………….………………..1

42 U.S.C. § 1983……………………………….……………………….…………2

N.C. Gen. Stat. § 160A-184…………………………………………………..18

*Other Authorities*

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 101 (2012)……………………………………………………………17

# JURISDICTIONAL STATEMENT

The first Order appealed from [JA048-084], denying the Defendant-Appellant's Motion to Dismiss, was "not final, and thus, not immediately reviewable." <u>Learning Network, Inc. v. Discovery Commc'ns, Inc.</u>, 11 F. App'x 297, 300 (4th Cir. 2001). Now, however, the Court has entered a Final Order [JA350-381], and the subject Orders are properly before the Court for review pursuant to 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

Issue 1: Did the District Court err by entering a ruling that, if affirmed, would create a circuit-split between the Fourth and Fifth Circuits?

Issue 2: Did the District Court err by concluding that the ordinance at issue impinged upon the Plaintiff-Appellee's First Amendment rights?

Issue 3: Did the District Court err by concluding that the ordinance at issue was unconstitutionally vague?

# STATEMENT OF THE CASE

This matter was initiated on October 20, 2022, by the Plaintiff's filing of a Verified Complaint. [JA007-040]. The Verified Complaint initially named the City of Asheville (hereinafter the "City") and Ben Woody as Defendants, with claims being advanced against Mr. Woody in both his official and individual capacities.

[JA007]. On November 17, 2022, however, the Plaintiff-Appellee voluntarily dismissed his individual-capacity claims against Mr. Woody. [JA045].

The Verified Complaint advances two causes of action against the Defendant-Appellees under 42 U.S.C. § 1983: (1) a First Amendment claim alleging the City infringed upon the Plaintiff-Appellant's rights by restricting his ability to use a bullhorn within 150 feet of schools or medical clinics [JA037], and (2) a due process claim alleging that the City's ordinance containing the aforementioned regulation was unconstitutionally vague. [JA037-038]. The ordinance at issue, Section 10-85(2) of the City Code, applies only to the 150 feet immediately surrounding a school or medical clinic, and prohibits only the use of "amplified sound." [JA027]. By the express terms of Section 10-85(2) of the City Code, the restriction on amplified sound contained therein is only in effect during the hours that a school is in session, or a medical clinic "is open or otherwise caring for patients." [JA027].

The Defendant-Appellants filed their Motion to Dismiss the Verified Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on November 15, 2022. [JA041-044]. The District Court issued a Memorandum of Decision and Order on February 8, 2023, in which it denied the City's Motion to Dismiss. [JA048-084]. By that Order, the District Court further enjoined the City

from enforcing the subject ordinance during the pendency of this matter. [JA048-084].

On August 22, 2023, the City amended the ordinances at issue, Sections 10-82 and 10-85 of the City Code, to clarify the application and scope of its regulations on the use of amplified sound near schools and medical clinics. [JA114]. Based on these clarifying amendments, the City moved to dismiss the Verified Complaint as moot on October 13, 2023. [JA108-112]. Thereafter, on November 15, 2023, the Plaintiff-Appellee filed a Motion for Summary Judgment. [JA117-123]. On March 25, 2024, the District Court issued a Memorandum of Decision and Order that denied the Defendant-Appellants' Motion to Dismiss as Moot, and granted the Plaintiff-Appellee's Motion for Summary Judgment. [JA350-391]. The Defendant-Appellants tendered their Notice of Appeal therefrom on April 22, 2024. [JA392-393].

## SUMMARY OF ARGUMENT

The Defendant-Appellants will argue in the instant appeal that the District Court erred by issuing an Order that, if affirmed, would create a circuit-split between the Fourth Circuit and a 1989 panel of the Fifth Circuit. They will further argue that the District Court erred in finding that the ordinance challenged by the Plaintiff-Appellee violated his First Amendment rights. Finally, the

Defendant-Appellants' contend the District Court erred by finding the subject ordinance to be unconstitutionally vague.

## ARGUMENT

### I.  Standard of Review

The Orders appealed from include two denials of the Defendant-Appellants' Motions to Dismiss, and the granting of the Plaintiff-Appellee's Motion for Summary Judgment. [JA048-084, JA350-391]. The Fourth Circuit applies "a de novo standard of review for appeals of both motions to dismiss for failure to state a claim and summary-judgment orders." Benjamin v. Sparks, 986 F.3d 332, 351 (4th Cir. 2021) (Internal citations omitted). Accordingly, the Court may appropriately apply a *de novo* standard of review to the entirety of the instant appeal.

### II.  The District Court Erred in Issuing a Ruling Which, If Affirmed, Would Create a New Circuit Split.

As intimated above, it must initially be noted that there exists at least one decision by a federal circuit court finding that a municipal prohibition on the use of amplified sound within 150 feet of schools or medical clinics does not impinge upon the First Amendment rights of those seeking to protest outside of such facilities. Medlin v. Palmer, 874 F.2d 1085, 1090 (5th Cir. 1989).[1] The regulation

---

[1] While only the Fifth Circuit appears to have held that the exact same 150-foot restriction on amplified sound near a medical clinic does not violate the First Amendment, other jurisdictions have come very close to the same conclusion. See Pine v. City of W. Palm Beach, FL, 762 F.3d 1262, 1269 (11th Cir. 2014) (upholding a 100-foot restriction on amplified sound or shouting near medical clinics). Accordingly, and depending on how narrowly one chooses to characterize such decisions, the circuit split that would be created by affirming the District Court's Orders in

challenged in this action, Section 10-85(2) of the City's Code of Ordinances, contains the same prohibition on the use of amplified sound within 150 feet of schools or medical clinics that the Fifth Circuit found to be constitutionally unproblematic in <u>Medlin</u>. In asking this Court to affirm the holding of the District Court, the Plaintiff-Appellee seeks to have this Court knowingly create a circuit split.

In such instances, this Court will most commonly "decline the invitation to create a circuit split." <u>Elhady v. Kable</u>, 993 F.3d 208, 213 (4th Cir. 2021). <u>See also</u> <u>United States v. Santos-Portillo</u>, 997 F.3d 159, 165 (4th Cir. 2021) ("We find these authorities persuasive and decline to create a circuit split"); <u>Castaneda v. Perry</u>, 95 F.4th 750, 759 (4th Cir. 2024) (*accord*); <u>Folkes v. Nelsen</u>, 34 F.4th 258, 279 (4th Cir. 2022) (*accord*) <u>Huntington Ingalls Inc. v. N.L.R.B.</u>, 631 F. App'x 127, 131 (4th Cir. 2015) (*accord*); <u>F.T.C. v. Ross</u>, 743 F.3d 886, 892 (4th Cir. 2014) (*accord*); <u>Shirvinski v. U.S. Coast Guard</u>, 673 F.3d 308, 316 (4th Cir. 2012) (*accord*); <u>United States v. Terry</u>, 257 F.3d 366, 369 (4th Cir. 2001) (*accord*). The Court has been explicit in taking this stance, noting as recently as in May of this year that "we try to avoid creating circuit splits." <u>Scott v. Baltimore Cnty., Maryland</u>, 101 F.4th 336, 348 (4th Cir. 2024). "The reason is simple: 'federal law is supposed to be unitary.'"

---

this case would see the Court taking a position that is inconsistent with *at least* one other circuit, but possibly more.

United States v. Heyward, 42 F.4th 460, 482 (4th Cir. 2022) (Agee, J., dissenting) (quoting Wash. Energy Co. v. United States, 94 F.3d 1557, 1561 (Fed. Cir. 1996)).

Notwithstanding this Court's clear preference against creating circuit splits, the District Court decision does not distinguish Medlin from the instant case and, in fact, does not cite Medlin a single time in either of the Orders that are presently on appeal. A review of the substance of the decision in Medlin discloses unambiguously that the Fifth Circuit's[2] rationale was sound, and that it was manifestly unreasonable for the District Court to disregard this persuasive authority in its entirety. As such, this Court should reject the Plaintiff-Appellee's invitation to create a circuit split.

## III. The Challenged Ordinance Does Not Violate the Plaintiff-Appellee's First Amendment Rights.

Where, as here, no reference to the content of a person's speech needs to be made to determine whether a regulation has been violated, that ordinance is subjected to an intermediate-scrutiny review. See Wag More Dogs Liab. Corp. v. Cozart, 680 F.3d 359, 366 (4th Cir. 2012) ("The Court has repeatedly explained that government regulation of expressive activity is 'content neutral' if it is justified without reference to the content of regulated speech.") (Internal quotations omitted). A content neutral regulation of speech like Section 10-85(2) "is generally

---

[2] The specific panel of the Fifth Circuit that decided Medlin was comprised of Chief Judge Charles Clark, Judge E. Grady Jolly, and Judge Samuel D. Johnson, Jr.

valid if it furthers a substantial government interest, is narrowly tailored to further that interest, and leaves open ample alternative channels of communication." Am. Legion Post 7 of Durham, N.C. v. City of Durham, 239 F.3d 601, 609 (4th Cir. 2001); see also Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Because Section 10-85(2) furthers an established and substantial government interest, is narrowly tailored, and leaves open ample other avenues for speech, the District Court's Orders should be reversed.

## A. Section 10-85(2) of the City Code Furthers a Substantial Government Interest.

The Fourth Circuit has clearly held that the identification of a substantial government interest under the first prong of the Ward test may be satisfied by comparing a challenged law or policy to those that have previously been held to advance a substantial government interest. See Wag More Dogs, 680 F.3d at 365 n. 3 (4th Cir. 2012); Reynolds v. Middleton, 779 F.3d 222, 227 (4th Cir. 2015); Billups v. City of Charleston, S.C., 961 F.3d 673, 685 (4th Cir. 2020). Building upon the principles stated in Wag More, the Court in Reynolds noted that "we generally have not required the government to present evidence to show the existence of a significant governmental interest." Reynolds, 779 F.3d at 227. Expanding upon this holding, this Court reiterated in 2020 that "we have found 'common sense and the holdings of prior cases' sufficient to establish the existence

of" a substantial government interest for purposes of First Amendment analyses. Billups, 961 F.3d at 685 (quoting Reynolds, 779 F.3d at 227).

Both the Supreme Court and lower courts have repeatedly and unambiguously held that protecting people receiving medical treatment from harmful noise constitutes a legitimate government interest for the purpose of First Amendment challenges under Ward. See Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 755, 114 S. Ct. 2516, 2520, 129 L. Ed. 2d 593 (1994); Hill v. Colorado, 530 U.S. 703, 729, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). In Hill and Madsen, the Supreme Court recognized that the government has a substantial interest in protecting medical patients from harmful noise both prior to and following the performance of medical procedures. See Hill, 530 U.S. at 729, 120 S.Ct. at 2480, 147 L.Ed.2d 597 ("[p]ersons who are attempting to enter health care facilities—for any purpose—are often in particularly vulnerable physical and emotional conditions.") See also Madsen, 512 U.S. at 755, 114 S. Ct. at 2520, 129 L. Ed. 2d 593 ("[n]oise control is particularly important around medical facilities during surgery and recovery periods.") This is so insofar as "[i]t is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'" Hill, 530 U.S. at 715, 120 S. Ct. at 2489, 147 L. Ed. 2d 597 (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

That there is a clearly established and substantial governmental interest in protecting medical patients from excessive sound would seem to be confirmed by reference to the Fifth Circuit's holding on this same issue in <u>Medlin</u>. There, the Fifth Circuit noted that a 150-foot prohibition on amplified sound specifically "serves a legitimate governmental interest in protecting patients of hospitals and clinics from the unwarranted intrusion of amplified sound generated by 'pro-life' activists." <u>Medlin</u>, 874 F.2d at 1090. In short, <u>Hill</u>, <u>Madsen</u>, and <u>Medlin</u> may be read to hold that the City has a substantial interest in protecting medical patients from intrusive sound, and that such an interest justifies a restriction on the use of amplified sound within 150-feet of medical clinics. As such, Defendant-Appellants requestfully request the Court find that Section 10-85(2) satisfies the first prong of the <u>Ward</u> test, in that it furthers a compelling governmental interest.

**B. Section 10-85(2) of the City Code is Narrowly Tailored.**

In evaluating whether a municipality has narrowly tailored its ordinances to avoid unnecessarily burdening speech, municipalities are not held to a standard of infallibility. <u>See</u> <u>Ross v. Early</u>, 746 F.3d 546, 557 (4th Cir. 2014). In <u>Ross,</u> this Court acknowledged that the narrow tailoring standard applicable to municipalities under <u>Ward</u> does not require them to "regulate using the least restrictive or least intrusive means available to achieve its goals. Put differently, so long as the means chosen are not substantially broader than necessary to achieve the government's

interest the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." <u>Ross</u>, 746 F.3d at 557 (internal quotations and formatting omitted). Here, the plain language of the challenged ordinance clearly demonstrates that the City has narrowly tailored the same to meet its interest in protecting vulnerable medical patients from unwanted and harmful noise.

Specifically, the text of Section 10-85(2) discloses that it only prohibits the use of amplified sound within the 150 feet surrounding specified sensitive facilities, and limits that prohibition's effect to only those hours in which such sensitive facilities are actually open. [JA027]. Case law from both within and without this Judicial Circuit indicates that these forms of tailoring are sufficient to immunize a challenged ordinance under the second prong of the <u>Ward</u> test. <u>See</u> <u>O'Connell v. City of New Bern, N. Carolina</u>, 447 F. Supp. 3d 466, 480 (E.D.N.C. 2020), and <u>Pine v. City of W. Palm Beach, FL</u>, 762 F.3d 1262, 1269 (11th Cir. 2014). In <u>O'Connell</u>, the District Court for the Eastern District of North Carolina ruled that the City of New Bern's noise ordinance–specifically its prohibition on amplified speech that could be heard more than 100 feet away–had been sufficiently tailored to survive the plaintiff's First Amendment challenge by virtue of the fact that its application was limited to a relatively small geographical area. <u>See</u> <u>O'Connell</u>, 447 F. Supp. 3d at 480 ("In the instant case, application of the

ordinance advances a significant government interest in restricting loud and raucous noises. **The ordinance furthered this interest in a narrowly tailored manner by setting a 100-foot noise limitation for sound amplification devices.**") (Internal citations omitted, emphasis added). It should be noted that the ordinance found to have been sufficiently narrowly tailored in O'Connell is in fact considerably broader than the ordinance challenged here. Unlike the ordinance considered by the District Court for the Eastern District of North Carolina, the constraints placed on the use of amplified sound by Section 10-85(2) apply only in fixed locations, immediately adjacent to schools and medical clinics. [JA027].

The Eleventh Circuit in Pine was similarly called upon to determine the validity of an ordinance that provided "that no person, within 100 feet of a health care facility's property line, 'shall shout' or produce 'any amplified sound, including a loudspeaker, drum, radio, phonograph, stereo set, tape or CD player, television, sound amplifier, or other electronic audio instrument or device that produces or reproduces amplified sound.'" Pine, 762 F.3d at 1270. Although the ordinance at issue in Pine was obviously broader than that at issue in the present case insofar as it prohibited not just amplified sound but also shouting, the Eleventh Circuit nonetheless found that it had been sufficiently narrowly tailored to meet West Palm Beach's goal of "protecting patient health in areas near health care facilities and institutions for the sick or infirmed." Id. at 1273.

Finally, in evaluating whether the City's tailoring of Section 10-85(2)'s application is sufficiently narrow, reference should again be made to the Fifth Circuit's analysis in Medlin, *supra*. In considering whether a prohibition on the use of amplified sound within 150 feet of schools or medical clinics was narrowly tailored and left ample alternative means for communication, the Fifth Circuit found, without difficulty, as follows:

> **It is tailored so as to protect people suffering from ill health, the aged, and school children from the nuisance of loudspeaker noise regardless of what message issues from the loudspeaker.** Thus, the ordinance, as a time, place, and manner regulation, is constitutionally valid provided that it is 'designed to serve a substantial governmental interest and [does] not unreasonably limit alternative avenues of communication.'

Medlin, 874 F.2d at 1090 (quoting City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986) (emphasis added). The Fifth Circuit's conclusion that the subject prohibition on amplified sound was narrowly tailored can best be understood by reference to its earlier holding in Reeves v. McConn, 631 F.2d 377, 385 (5th Cir. 1980). There, it had held that a prohibition on amplified sound failed to meet the narrow tailoring requirement insofar as it applied at all hours of the day, without regard to whether the facilities it was intended to protect were actually in operation and open to the public. See Reeves, 631 F.2d at 385 ("there can be no valid state interest in prohibiting all sound amplification within 100 yards of schools, courthouses, and churches **outside the normal hours of use.**") (Emphasis added). Here, as in Medlin, the City's

ordinance has been narrowly tailored to limit its application to only those hours during which the populations it is intended to protect- students and medical patients- are actually present in the schools and medical clinics Section 10-85(2) applies to. [JA027]. Because the challenged ordinance exhibits the selfsame hallmarks of narrow tailoring found to be sufficient in Medlin, Pine, and O'Connell, the Defendant-Appellants respectfully requests the Court find that it satisfies the second prong of the Ward test.

## C. Section 10-85(2) of the City Code Leaves Open Ample Alternative Channels of Communication.

The third and final prong of the Ward test requires that the challenged ordinance must "leave open ample alternative channels of communication." Ward, 491 U.S. at 802, 109 S. Ct. at 2760, 105 L. Ed. 2d 661. "In order to satisfy this standard, the available alternatives need not be the speaker's first or best choice or provide the same audience or impact for the speech. Rather, the relevant inquiry is simply whether the challenged regulation provides avenues for the more general dissemination of a message." Ross, 746 F.3d at 559 (internal quotations omitted).

Courts that have applied the foregoing principles in the context of First Amendment claims relating to amplification prohibitions have rightly acknowledged that, by definition, if the challenged ordinance allows the speaker to continue to disseminate their message from any distance, without the use of amplification, they have been left with ample alternative opportunities to exercise

their First Amendment rights. *See* O'Connell, 447 F. Supp. 3d at 480 (finding ample alternative channels existed to the plaintiffs as "they were free to preach using their voices without amplification.") *See also* Pine, 762 F.3d at 1274–75 ("we conclude that the Sound Ordinance leaves open robust alternative channels of communication. As the district court found, Appellants 'are still free to talk, sing, hold up signs, and distribute literature to patients within the quiet zone.' They 'may still use amplified sound anywhere outside the quiet zone' because the Sound Ordinance applies only to sound produced within a quiet zone, not noise that can be heard there.") Indeed, in Ward itself, the Supreme Court noted that the fact that "the city's limitations on volume may reduce to some degree the potential audience for respondent's speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate." Ward, 491 U.S. at 802, 109 S. Ct. at, 2760, 105 L. Ed. 2d 661.

Finally, given that it involved a virtually identical ordinance, further consideration of the decision in Medlin is warranted on the question of alternative channels of communication. There, as here, the plaintiffs had alleged "that they are unable to reach significant portions of their desired audience without resort to bullhorns because of the physical configurations of the clinics and adjacent sidewalks." Medlin, 874 F.2d at 1090. In rejecting that conclusion out of hand, the Fifth Circuit noted:

> the ordinance prevents the use of amplified sound in close proximity to certain institutions such as hospitals and convalescent homes without unnecessarily impinging on alternate methods of communication. It does not prohibit unamplified speech. It does not prohibit the distribution of written material. It does not prohibit the display of signs and placards nor does it prohibit any symbolic speech. Accordingly, as the district court concluded, the ordinance falls way short of precluding alternative avenues of communication…

Id. This conclusion is entirely consistent with the Fourth Circuit's precedents on what alternate channels of communication are constitutionally required. Ross, 746 F.3d at 559. Here, as in Medlin, the challenged ordinance does nothing to restrict the Plaintiff-Appellee's ability to display signs, distribute written materials, or to literally speak. Under the standards expressed in Ross, Section 10-85(2) of the City Code allows him ample alternative means of communication, and the Defendant-Appellants accordingly request that the Court find that it satisfies the third prong of Ward.

## IV.   The Challenged Ordinance is Not Unconstitutionally Vague.

The District Court in this matter was twice called upon to determine whether Section 10-85(2) is unconstitutionally vague. First, it was presented with the original iteration of that ordinance in deciding the City's initial Motion to Dismiss. [JA077-079]. Second, it was presented with a version of Section 10-85(2) that had been amended with the intention of erasing whatever arguable ambiguity the District Court initially found. [JA383-387]. The District Court's analysis of these two issues will be addressed in chronological order.

## A. The Original Iteration of Section 10-85(2) Did Not Violate Due Process Requirements for Clarity.

It is well-settled that a content neutral regulation may be invalidated on due process grounds if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 128 S. Ct. 1830, 1835, 170 L. Ed. 2d 650 (2008). In the instant case, Plaintiff-Appellee initially contended that the term "amplified sound," as used within Section 10-85(2) of the City Code, was unconstitutionally vague. Three key canons of construction apply to guide the Court's analysis of this argument.

First, this Court has long explained that the test for clarity under the Due Process Clause does not require municipalities to write all ordinances with mathematical exactitude. See Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Env't Control, 317 F.3d 357, 366 (4th Cir. 2002) ("because we are 'condemned to the use of words, we can never expect mathematical certainty from our language.'") (Quoting Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Second, it is well-settled that where, as here, an ordinance is enforceable through a purely civil remedy, "[l]ess clarity is required… because the 'consequences of imprecision are qualitatively less severe.'" Manning v. Caldwell for City of Roanoke, 930 F.3d 264, 272 (4th Cir. 2019) (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455

U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). Finally, Section 10-85(2) of the City Code should be interpreted consistent with the Supreme Court's "elementary rule… that every reasonable construction must be resorted to in order to save a statute from unconstitutionality." <u>Hooper v. People of State of Cal.</u>, 155 U.S. 648, 657, 15 S. Ct. 207, 211, 39 L. Ed. 297 (1895). The District Court's determination that a person of ordinary intelligence could not reasonably be expected to understand the meaning of the term "amplified sound" is incompatible with these canons of interpretation.

The argument advanced by the Plaintiff-Appellee, and accepted by the District Court, appears to be that the City surely must have intended to only prohibit the use of either *electrically*-amplified sound, or *nonelectronically*-amplified sound, but not both, rendering it impossible to know what was actually intended. Such an argument is incompatible with each of the aforementioned general canons of construction, but also with the specific rule that "[w]ithout some indication to the contrary, general words (like all words, general or not) are to be accorded their full and fair scope. They are not to be arbitrarily limited. This is the general-terms canon." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 101 (2012) (referring to this rule by its Latin designation, "*generalia verba sunt generaliter intelligenda*").[3]

---

[3] <u>Compare</u> <u>United States v. Hawley</u>, 919 F.3d 252, 256 (4th Cir. 2019) (discussing the inverse canon of interpretation, *expressio unius est exclusio alterius*).

Here, the City prohibited the use of all forms of amplified sound within 150-feet of an open school or medical clinic, as demonstrated by the fact that it did not attempt to specifically limit that prohibition to some particular form of amplification. Moreover, it can scarcely be said that Section 10-85(2) is somehow anomalous in its application to all amplified sound; the State of North Carolina has, in authorizing municipalities to adopt such regulations, used the exact same phraseology. See N.C. Gen. Stat. § 160A-184 ("[a] city may by ordinance regulate, restrict, or prohibit the production or emission of noises or **amplified speech, music, or other sounds** that tend to annoy, disturb, or frighten its citizens.") (Emphasis added). Because it would be consistent with all five of the applicable canons of construction discussed above to conclude that the City really did intend to prohibit the use of *any* amplified sound within 150-feet of a school or medical provider, the Plaintiff-Appellee's due process challenge should have been dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B. The Amended Version of Section 10-85(2) Did Not Violate Due Process Requirements for Clarity.**

Notwithstanding the City's firm disagreement with the District Court's conclusion that the term "amplified sound" is unconstitutionally vague, following the denial of the Defendant-Appellants' Motion to Dismiss [JA048-084], it undertook to amend its ordinances, in order to place it outside the realm of possibility that an incorrect meaning might be read into that term. Specifically, the

City defined the term "amplified sound" to mean "a sound augmented by any electronic or other means that increases the sound level or volume." [JA116]. This definition is identical to that used by the City of West Palm Beach, and which the Eleventh Circuit reviewed in <u>Pine</u>, *supra*. <u>Pine</u>, 762 F.3d at 1267.

Following this amendment, the Plaintiff-Appellant conceded and the District Court acknowledged that it was no longer possible to claim an ambiguity existed within Section 10-85(2). [JA384].v Notwithstanding the foregoing, the District Court nonetheless proceeded to grant the Plaintiff-Appellee's Motion for Summary Judgment, and denied the City's Motion to Dismiss as Moot on the basis that he had suffered a constitutional injury during the time prior to the term "amplified sound" becoming expressly defined. [JA387]. That conclusion was inconsistent with this Court's precedent.

In order for the Plaintiff-Appellant to be entitled to even nominal damages in relation to his claim that Section 10-85(2) of the City Code was unconstitutionally vague for a period of time, he must be able to demonstrate that he actually suffered a deprivation of his rights. <u>See</u> <u>Chapin Furniture Outlet Inc. v. Town of Chapin</u>, 252 F. App'x 566, 572 (4th Cir. 2007) ("In the absence of a constitutional deprivation, Chapin's nominal damages claim does not save this case from mootness.") Here, however, it was the Plaintiff-Appellee's ostensible belief that Section 10-85(2) might only prevent some forms of amplified sound, and not all

amplified sound as it did. Phrased differently, even if the Plaintiff-Appellee was genuinely unable to discern what types of amplified sound were banned within 150-feet of an open school or medical clinic, his constitutional rights were in no way infringed given that *all* such amplified sound was prohibited. If he refrained from using some forms of amplified sound prior to the adoption of a definition for that term, he was, in fact, complying with the minimum requirements of Section 10-85(2). Accordingly, because the Plaintiff-Appellee never suffered a deprivation of his constitutional rights, the District Court's awarding of even nominal damages was improper.

## CONCLUSION

For the reasons set forth above, the Defendant-Appellants respectfully request the Court find that Section 10-85(2) of the City Code, in both its original and current forms, did not violate the Plaintiff-Appellee's First Amendment or due process rights, and reverse the Orders of the District Court that are the subject of the instant appeal.

RESPECTFULLY SUBMITTED this the 24th day of July, 2024.

CITY OF ASHEVILLE
CITY ATTORNEY'S OFFICE

By:    <u>s/Eric P. Edgerton</u>
        Eric P. Edgerton
        Sr. Asst. City Attorney
        N.C. Bar No. 47717

P.O. Box 7148
Asheville, NC 28802
Tele: (828) 259-5610
eedgerton@ashevillenc.gov

*Attorney for*
*Defendant-Appellants*

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 34 of the Federal Rules of Appellate Procedure, the Defendant-Appellants respectfully request that oral arguments be allowed in the instant appeal, on the basis that it presents constitutional questions of first impression, and concerns the potential creation of a federal circuit split.

## CERTIFICATE OF COMPLIANCE

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), it contains 4,708 words. This brief complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Times New Roman, on the Google Documents platform.

This the 24th day of July, 2024.

s/ Eric P. Edgerton
Eric P. Edgerton

## CERTIFICATE OF SERVICE

This is to certify that the foregoing *Brief Of Defendant-Appellants City of Asheville, North Carolina and Ben Woody* has been duly served by electronically filing via the Electronic Filing System to:

B. Tyler Brooks
N.C. Bar No. 37604
Law Office of B. Tyler Brooks, PLLC
P.O. Box 10767
Greensboro, N.C.
Telephone: (336) 707-8855
Facsimile: (336) 900-6535
Email: btb@btylerbrookslawyer.com

Nathan W. Kellum
TN BAR #13482; MS BAR # 8813
Center For Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117
Telephone: (901) 684-5485
Facsimile: (901) 684-5499
Email: nkellum@crelaw.org

This the 24th day of July, 2024.

s/ Eric P. Edgerton
Eric P. Edgerton