No. 24-1383

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

ZACHARY HEBB,

Plaintiff-Appellee,

v.

CITY OF ASHEVILLE, NORTH CAROLINA and BEN WOODY, in his Official Capacity,

Defendants-Appellants,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA- ASHEVILLE
DIVISION

---

**DEFENDANT-APPELLANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF-APPELLEE'S PETITION FOR REHEARING EN BANC**

---

Eric P. Edgerton
N.C. Bar No. 47717
P.O. Box 7148
Asheville, NC 28802
Tele: (828) 259-5610
eedgerton@ashevillenc.gov

*Counsel for Defendant-Appellants*

# TABLE OF CONTENTS

Table of Authorities…..…………………………………………………………ii

I. Granting of En Banc Review is Unwarranted Insofar as the Panel Opinion Reached the Only Holding that Avoids the Creation of a Circuit Split…………........1

II. The Panel Opinion Correctly Applied the Narrow-Tailoring Precedents of this Circuit and the United States Supreme Court, in Determining the Plaintiff-Appellee Was Not Entitled to the Entry of Summary Judgment……………………………..4

a. The Joint Appendix Contains Ample Evidence that the City Considered the Viability of Less-Restrictive Means of Regulation Before Adopting Section 10-85(2) of the City Code…………………………………………………………..5

b. The Substance of Section 10-85(2) of the City Code Itself Bears the Selfsame Hallmarks of Narrow-Tailoring that Federal Courts Have Found Sufficient to Survive First Amendment Challenges………………………………………………..8

c. The Panel Opinion Applied the Correct Legal Tests for Narrow-Tailoring……10

III. The Panel Opinion Correctly Applied the Due Process Clause Precedents of this Circuit and the United States Supreme Court, in Determining that Section 10-85(2) of the City Code Was Not Unconstitutionally Vague as Originally Drafted……………………………………………………………..……………..13

Conclusion………………………………………………………………………..16

Certificate of Compliance……………………………………………………………17

Certificate of Service…………………………………………………………………..18

# TABLE OF AUTHORITIES

Billups v. City of Charleston, S.C., 961 F.3d 673 (4th Cir. 2020)..................4

Coalition Life v. City of Carbondale, Illinois, No. 24-57, 2025 WL 581618 (U.S. Feb. 24, 2025)..................................................................3

City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)..................................................................9

DiCocco v. Garland, 18 F.4th 406 (4th Cir. 2021).........................................4

Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)..................................................................14

Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Env't Control, 317 F.3d 357 (4th Cir. 2002)..................................................14

Hooper v. People of State of Cal., 155 U.S. 648, 15 S. Ct. 207, 39 L. Ed. 297 (1895)..................................................................14

Kadel v. N. Carolina State Health Plan for Tchrs. & State Emps., 12 F.4th 422 (4th Cir. 2021)..................................................................3

Lytle v. Doyle, 326 F.3d 463 (4th Cir. 2003).......................................5 and 15

Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 114 S. Ct. 2516, 129 L. Ed. 2d 593 (1994)..................................................................12

Manning v. Caldwell for City of Roanoke, 930 F.3d 264 (4th Cir. 2019).5, 14

Martin v. Duffy, 977 F.3d 294 (4th Cir. 2020)..............................................12

Mayor of Baltimore v. Azar, 973 F.3d 258 (4th Cir. 2020)...................3 and 4

McCullen v. Coakley, 573 U.S. 464, 490, 134 S. Ct. 2518, 2537, 189 L. Ed. 2d 502 (2014)..................................................................5, 9, and 10

Medlin v. Palmer, 874 F.2d 1085 (5th Cir. 1989)................................2 and 9

O'Connell v. City of New Bern, N. Carolina, 447 F. Supp. 3d 466 (E.D.N.C. 2020)..........................................................................................................9

Pine v. City of W. Palm Beach, FL, 762 F.3d 1262, (11th Cir. 2014)...2 and 9

Reynolds v. Middleton, 779 F.3d 222 (4th Cir. 2015)....................4, 5, and 10

Ross v. Early, 746 F.3d 546 (4th Cir. 2014)........................................10 and 11

Turco v. Englewood, NJ, No. 23-1189, 2025 WL 581834 (U.S. Feb. 24, 2025)..........................................................................................................3

United States v. Albertini, 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)........................................................................................................12

United States v. Umana, 762 F.3d 413 (4th Cir. 2014)....................................3

United States v. Williams, 553 U.S. 285, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)........................................................................................................13

U. S. Lab. Party v. Pomerleau, 557 F.2d 410 (4th Cir. 1977)..............7 and 11

Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)...................................................14

Ward v. Rock Against Racism, 491 U.S. 781, 109 S. Ct. 2746 105 L. Ed. 2d 661 (1989)..............................................................................5, 9, 10, 11, and 12

## ARGUMENT

As the Federal Rules of Appellate Procedure make clear, petitions for rehearings *en banc* are disfavored as a matter of law. See Fed. R. App. P. 40(c) ("Rehearing *en banc* is not favored and ordinarily will be allowed only if one of the criteria in Rule 40(b)(2)(A)-(D) is met.") Of the four bases upon which such petitions may be allowed, Plaintiff-Appellee asserts that the Panel Opinion conflicts with the precedents of this Circuit and the United States Supreme Court. [Doc. 41, p. 3]. The best response to this assertion, and the one which will occupy the supermajority of this brief, is of course to explain exactly why the Panel Opinion is entirely consistent with the controlling precedents of this Circuit and the Supreme Court. Notwithstanding the foregoing, it is also worth spending some time examining how, if the Plaintiff-Appellee's positions had been accepted by the Panel, it would have created a heretofore nonexistent circuit-split, which in and of itself would have warranted *en banc* review and reversal under Rule 40(b)(2)(C). That is where this Response will begin.

## I.     Granting of En Banc Review is Unwarranted Insofar as the Panel Opinion Reached the Only Holding that Avoids the Creation of a Circuit Split.

Pursuant to Rule 40(b)(2)(C) *en banc* review may be granted in instances where "the panel decision conflicts with an authoritative decision of another United States court of appeals," in order to avoid the creation of circuit-splits. In

1

the present case, the Plaintiff-Appellee seeks to flip that Rule upon its head, and asks this Court to grant *en banc* review in order to reach a holding that would create a circuit split where one presently does not exist.

The ordinance challenged in this matter, Section 10-85(2) of the City of Asheville City Code, applies only to the 150 feet immediately surrounding a school or medical clinic, and prohibits only the use of "amplified sound." [JA027]. By the express terms of Section 10-85(2) of the City Code, the restriction on amplified sound contained therein is only in effect during the hours that a school is in session, or a medical clinic "is open or otherwise caring for patients." [JA027]. In this way, it is identical to a Dallas, Texas ordinance that was challenged under the First Amendment and Due Process Clause in Medlin v. Palmer, 874 F.2d 1085, 1090 (5th Cir. 1989). It is also very nearly identical to a West Palm Beach, Florida ordinance that the Eleventh Circuit considered in Pine v. City of W. Palm Beach, FL, 762 F.3d 1262, 1269 (11th Cir. 2014).[1] In both of these extrajurisdictional cases, the challenged ordinances were found to be constitutionally unproblematic. Medlin, 874 F.2d at 1090; Pine, 762 F.3d at 1267. Accordingly, depending on how restrictively one wishes to read the ordinances in this case, Medlin, and Pine, accepting the Plaintiff-Appellant's position that Section 10-85(2) of the City Code

---

[1] The ordinance at issue in Pine likewise prohibited the use of amplified sound within a stated radius of medical clinics, but was in some ways more restrictive (it also prohibited shouting), and less-restrictive in others (its prohibition applied only to 100-feet outside of clinics, as opposed to the 150-foot radius for the ordinances in Medlin and the instant case).

2

violates both the First Amendment and Due Process Clause would create either a 1-1 or 2-1 circuit split, where one does not currently exist.

This Response will not dwell at length on why circuit splits are to be avoided, as to do so before this particular Court would come very near preaching to the choir. It appears that quite literally every member of the Court has either authored or joined opinions decrying the harms of willfully creating circuit splits. See e.g. Kadel v. N. Carolina State Health Plan for Tchrs. & State Emps., 12 F.4th 422, 447 (4th Cir. 2021) (Agee, J. dissenting) ("Circuit splits are not to be created without a strong or compelling reason for doing so, because federal law, especially federal constitutional law, is supposed to be unitary") (internal quotations omitted); United States v. Umana, 762 F.3d 413, 416 (4th Cir. 2014) (Wilkinson, J., concurring, joined by Niemeyer, J.) ("It is not our office to create a circuit split, preemptively overturn Supreme Court holdings, and attempt to force the Court's hand... Society lives by law. When courts, convened in their roles as guardians of law, set the example of abiding by law, society as a whole will replenish its faith in our most cherished institutions")[2]; Mayor of Baltimore v. Azar, 973 F.3d 258, 325

---

[2] This observation by Judge Wilkinson is particularly salient given that the United States Supreme Court has, within the past six months, consciously opted not to upend its longstanding precedents on the constitutionality of time, place, and manner regulations around reproductive health clinics. See Coalition Life v. City of Carbondale, Illinois, No. 24-57, 2025 WL 581618 (U.S. Feb. 24, 2025) and Turco v. Englewood, NJ, No. 23-1189, 2025 WL 581834 (U.S. Feb. 24, 2025). As discussed further in the Defendant-Appellants' supplemental authority letter [Doc. 38], although there was an impassioned dissent to the Court's denial of certiorari in these cases, a supermajority of the Court clearly was not inclined to revisit its precedents in this area of First Amendment law. As such, Judge Wilkinson's warning against acting preemptively, and forcing

(4th Cir. 2020) (Richardson, J., dissenting, joined by Wilkinson, J., Niemeyer, J., Agee, J., Quattlebaum, J., and Rushing, J.) ("Today's decision is wrong, and the resulting circuit split is needless"); DiCocco v. Garland, 18 F.4th 406, 433 (4th Cir. 2021) (Floyd, J., concurring in part) ("Tellingly, my colleagues do not cite to any federal circuits supporting its holding. Instead, they create a circuit split. ... I would avoid both the majority's creation of a circuit split and rebuke of our prior precedents.") The harm of circuit splits, as repeatedly and thoroughly described by the honorable members of this Court, is precisely why *en banc* review may properly be ordered where a panel's decision threatens to create a circuit split, F. R. App. Pro. Rule 40(b)(2)(C), and should not be ordered where, as here, a litigant seeks to have a panel's decision overturned in order that a new circuit split may be created.

## II. The Panel Opinion Correctly Applied the Narrow-Tailoring Precedents of this Circuit and the United States Supreme Court, in Determining the Plaintiff-Appellee Was Not Entitled to the Entry of Summary Judgment.

Plaintiff-Appellee first asserts that the Panel Opinion conflicts with this Circuit's precedents,[3] and two precedents of the United States Supreme Court on

---

the Supreme Court's hand through the creation of a circuit split, is highly instructive where, as here, the Court has shown a deliberate disinclination towards abandoning precedent.

[3] It should initially be noted that the Panel Opinion cited to and engaged with the rationales of every single prior decision of this Court that the Plaintiff-Appellee now says its opinion conflicts with. See Hebb v. City of Asheville, No. 24-1383 (4th Cir. July 23, 2025, slip opinion ["Op"]) at p. 11 (citing to Reynolds v. Middleton, 779 F.3d 222 (4th Cir. 2015); Op. at p. 12 (citing to Billups v. City of Charleston, S.C., 961 F.3d 673 (4th Cir. 2020)); Op. at p. 26 (citing to Manning

4

the narrow-tailoring piece of the First Amendment test set forth in Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). He claims the Panel Opinion conflicts in this way because it did not require the City to produce evidence showing it seriously considered less-restrictive forms of regulation before adopting Section 10-85(2) of the City Code and, relatedly, that the challenged code does not burden substantially more speech than is necessary. These arguments are belied by the factual record before the Court, and by the body of First Amendment case law on which the Plaintiff-Appellee seeks to rely.

### a. The Joint Appendix Contains Ample Evidence that the City Considered the Viability of Less-Restrictive Means of Regulation Before Adopting Section 10-85(2) of the City Code.

While the Plaintiff-Appellee has claimed in conclusory fashion that the City "offers nothing but argument in support of the contention the ordinance is narrowly tailored," [Doc. 41, p. 9], the Joint Appendix tells a very different tale. Specifically, it contains evidence supplied by the City demonstrating that it "seriously undertook to address the problem with less intrusive tools readily available to it." Reynolds, 779 F.3d at 231 (quoting McCullen v. Coakley, 573 U.S. 464, 490, 134 S. Ct. 2518, 2537, 189 L. Ed. 2d 502 (2014)). Namely, the City explained how its use of a subjective, "noise disturbance" standard had failed to address the documented problem of amplified sound within the rights of way of the City's medical district.

v. Caldwell for City of Roanoke, 930 F.3d 264 (4th Cir. 2019); Op. at 28 (citing to Lytle v. Doyle, 326 F.3d 463 (4th Cir. 2003)).

[J.A. 115].[4] Moreover, the evidence in the Joint Appendix discloses that the City grappled with, and ultimately rejected the idea of utilizing a decibel standard, rather than an amplification ban. See [J.A. 114] (Affidavit of Ben Woody, explaining that the City opted not to regulate noise in rights of way by decibel levels in light of the fact that most sources of noise in rights of way tend to be transient in nature, and "do not remain in a single location waiting to be measured.")

This latter alternative means of regulation, which the record discloses the City considered before enacting Section 10-85(2), is particularly relevant inasmuch as it directly refutes the core argument made by the Plaintiff-Appellee before this Court, both in briefing and in oral argument, as to why the City must have failed to consider less-restrictive means of regulation. See [Doc. 20, pp. 36-37] (discussing at length why a decibel standard of regulation would have been less-restrictive).[5] But the City did not simply provide the trial court and this Court with direct evidence as to why it had opted not to use decibel levels as a method of regulation within rights of way. [J.A. 114]. It also referred this Court back to precisely where,

---

[4] See also Hebb v. City of Asheville, N. Carolina, No. 1:22-CV-00222-MR-WCM, 2024 WL 1261205, *8 (W.D.N.C. Mar. 25, 2024) (in which the District Court even acknowledged this history, stating: "Some of the evidence of record supports these assertions. For instance, the City received 62 noise complaints regarding amplified sound in the immediate vicinity of open and operating medical facilities during the eight-year period *before* it adopted the First Ban.") (Quotations omitted, emphasis in original).

[5] See also Oral Argument, 32:34-32:54 ("that's why decibel levels are the way to go… that's why you use the decibel levels.") accessible at:
https://www.ca4.uscourts.gov/OAarchive/mp3/24-1383-20250131.mp3

6

in its own precedents, it had expressly rejected the viability of the Plaintiff-Appellee's primary proposed alternate means of regulation. U. S. Lab. Party v. Pomerleau, 557 F.2d 410, 412 (4th Cir. 1977).

In Pomerleau, this Court considered Baltimore, Maryland's attempt to regulate noise via decibel limits in all areas of the city. Pomerleau, 557 F.2d at 411. In rejecting the constitutional viability of this regulatory approach within rights of way, the Court explained:

> Baltimore's ordinance, as applied to the amplification of political speech on a public street, does not meet these tests. The evidence discloses that in commercial areas the Bureau of Noise Control cannot follow the ordinance's directive to measure decibels on 'the property line of the use.' Instead, its investigators measure volume from points where they have observed pedestrians or expect them to be. The speaker is thus penalized unless he correctly guesses where the investigator will take a measurement. Because a violation depends on the subjective opinion of the investigator, the speaker has no protection against arbitrary enforcement of the ordinance.

Id. at 412. Accordingly, when it comes to Plaintiff-Appellee's primary argument as to why the City must not have considered less-restrictive means of regulation- that it should have used a decibel limit rather than regulating sound amplification- not only does the factual record disclose that that option was considered and rejected, but this Court's own precedent confirms that the City was correct to reject it as an option as a matter of law.

7

**b. The Substance of Section 10-85(2) of the City Code Itself Bears the Selfsame Hallmarks of Narrow-Tailoring that Federal Courts Have Found Sufficient to Survive First Amendment Challenges.**

Admittedly, the Plaintiff-Appellee's Petition for Review *en banc* focuses heavily on his claim that there is an absence of evidence that the City considered less-restrictive means of regulation, and that Section 10-85(2) of the City Code burdens more speech than is necessary as a result. [Doc. 41, pp. 8-15]. The clearest rejoinder to this is to note exactly where such evidence exists within the Joint Appendix, and to point out that the Plaintiff-Appellant's primary example of a potentially less-restrictive mode of regulation has been rejected by this Court as a matter of law, as the Defendant-Appellants have done in the preceding section of this Response. At the same time, it should further be noted that the ways in which the City restricted the application of Section 10-85(2) are the exact same that have led courts within this Circuit and multiple other federal circuits to find that restrictions on amplification of this sort have been tailored with sufficient narrowness to survive First Amendment review.

Specifically, the text of Section 10-85(2) discloses that it only prohibits the use of amplified sound within the 150 feet surrounding specified sensitive facilities, and limits that prohibition's effect to only those hours in which such sensitive facilities are actually open. [JA027]. In the recent past, the District Court for the Eastern District of North Carolina applied this Court's precedents and ruled

8

that the City of New Bern's noise ordinance– specifically its prohibition on amplified speech that could be heard more than 100 feet away– had been sufficiently tailored to survive the plaintiff's First Amendment challenge by virtue of the fact that its application was limited to a relatively small geographical area. See O'Connell v. City of New Bern, N. Carolina, 447 F. Supp. 3d 466, 480 (E.D.N.C. 2020) ("In the instant case, application of the ordinance advances a significant government interest in restricting loud and raucous noises. **The ordinance furthered this interest in a narrowly tailored manner by setting a 100-foot noise limitation for sound amplification devices.**") (Internal citations omitted, emphasis added). Likewise, the Fifth Circuit in Medlin found these geographic and temporal forms of tailoring to be sufficient, stating:

> **It is tailored so as to protect people suffering from ill health, the aged, and school children from the nuisance of loudspeaker noise regardless of what message issues from the loudspeaker.** Thus, the ordinance, as a time, place, and manner regulation, is constitutionally valid provided that it is 'designed to serve a substantial governmental interest and [does] not unreasonably limit alternative avenues of communication.'

Medlin, 874 F.2d at 1090 (quoting City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986) (emphasis added).[6] In short, not only does the record before the Court affirmatively disclose that the City "seriously undertook to address the problem with less intrusive tools readily available to it,"

---

[6] See also Pine, 762 F.3d at 1270 (reaching the same conclusion, and noting in doing so that the Supreme Court had substantially relaxed the standards for narrow-tailoring via its decisions in Ward v. Rock Against Racism and McCullen v. Coakley).

as required by <u>Reynolds</u> and <u>McCullen</u>, *supra*, but the resulting ordinance- Section 10-85(2) of the City Code- exhibits the exact same hallmarks of narrow-tailoring that have led numerous federal courts to find restrictions on the use of amplified sound constitutionally unproblematic.

### c. The Panel Opinion Applied the Correct Legal Tests for Narrow-Tailoring.

When construed alongside the tests that this Circuit and the Supreme Court have established for narrow-tailoring, the above-referenced evidence that the City considered less restrictive alternatives to, and tightly limited the application of Section 10-85(2) of the City Code, confirms that the Panel Opinion correctly found the Plaintiff-Appellee was not entitled to an entry of Summary Judgment. The chain of cases that most clearly underscores the propriety of the Panel Opinion begins with <u>Ward v. Rock Against Racism</u>, continues through <u>McCullen v. Coakley</u>, and culminates in what remains this Court's most in depth discussion of narrow-tailoring: <u>Ross v. Early</u>, 746 F.3d 546, 557 (4th Cir. 2014).

As the Supreme Court has now made unambiguously clear, when federal courts are construing a content-neutral time, place, and manner restriction, "[s]uch a regulation, unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government's interests." <u>McCullen</u>, 573 U.S. at 486, 134 S. Ct. at 2535 (internal quotations omitted). Phrased differently, "[s]o long as the means chosen are not substantially broader

than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." <u>Ward</u>, 491 U.S. at 800, 109 S. Ct. at 2758. These holdings are why this Court has previously explained that a litigant's mere ability to postulate "feasible alternatives" that they claim would burden less speech is insufficient to support a finding that a regulation fails the narrow-tailoring requirement. <u>Ross v. Early</u>, 746 F.3d 546, 557 (4th Cir. 2014).

One can easily apply these standards to the facts and evidence summarized above. The Plaintiff-Appellee was explicit in arguing before the Panel that the reason he believed the City failed to consider less-restrictive modes of regulation, and thus burdened more speech than was necessary, was because it should have regulated via decibel restrictions.[7] If we set to one side the fact that this Court has already held that decibel limits are not acceptable forms of regulation in rights of way, <u>Pomerleau</u>, 557 F.2d at 411, and simply reviewed that argument against the holdings in <u>Ward</u>, <u>McConnell</u>, and <u>Ross</u>, it is clear that the Plaintiff-Appellee would not have gone far enough to establish that the challenged ordinance was not narrowly-tailored, as the relevant test is expressly not whether "there is some

---

[7] <u>See</u> [Doc. 20, pp. 36-37](discussing at length why a decibel standard of regulation would have been less-restrictive); Oral Argument, 32:34-32:54 ("that's why decibel levels are the way to go … that's why you use the decibel levels.") accessible at:
https://www.ca4.uscourts.gov/OAarchive/mp3/24-1383-20250131.mp3

11

imaginable alternative that might be less burdensome on speech." <u>Ward</u>, 491 U.S. at 797, 109 S. Ct. at 2757 (quoting <u>United States v. Albertini</u>, 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985)). Rather, the Plaintiff-Appellee needed to explain precisely how the City's ordinance burdened "substantially more speech" than was necessary, something he could not do given the extremely modest scope of the challenged regulation. <u>See</u> <u>Op.</u> at p. 20 ("Section 10-85(2) does not burden substantially more speech than is necessary to further Asheville's legitimate regulatory interests. The ordinance limits a single medium of speech in a type of public space in which '[n]oise control is particularly important.'") (Quoting <u>Madsen v. Women's Health Ctr., Inc.</u>, 512 U.S. 753, 772, 114 S. Ct. 2516, 2528, 129 L. Ed. 2d 593 (1994)).

Finally, the procedural posture of the instant case, when it came to the Panel, must be acknowledged. The Panel was called upon to determine whether the record before the District Court was so abundantly clear that the Plaintiff-Appellee was entitled to an order of Summary Judgment. [JA392]. As this Court has repeatedly explained, "[s]ummary judgment is only appropriate when, viewing the facts in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law.'" <u>Martin v. Duffy</u>, 977 F.3d 294, 298 (4th Cir. 2020) (quoting Fed. R. Civ. Proc. 56(a)). The Panel Opinion makes pains to reiterate that it was relying on this standard of

review in reaching its decision. See Op. at p. 25, ("Because Asheville has not moved for summary judgment, we express no opinion as to whether Section 10-85(2) survives intermediate scrutiny when the record is viewed in the light most favorable to Hebb. We hold only that the district court erred in concluding that, viewing the facts in the light most favorable to Asheville, Section 10-85(2) violates Hebb's freedom of speech.") While the Defendant-Appellants are confident they will prevail in obtaining final disposition in their favor upon remand, the Plaintiff-Appellee's assertion that the Panel disregarded binding precedent must be viewed alongside the mandate the Panel was under pursuant to Rule 56- to make all reasonable inferences in the City's favor.

**III.    The Panel Opinion Correctly Applied the Due Process Clause Precedents of this Circuit and the United States Supreme Court, in Determining that Section 10-85(2) of the City Code Was Not Unconstitutionally Vague as Originally Drafted.**

It is well-settled that a content neutral regulation may be invalidated on due process grounds if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 128 S. Ct. 1830, 1835, 170 L. Ed. 2d 650 (2008). In the instant case, Plaintiff-Appellee initially contended that the term "amplified sound," as used within Section 10-85(2) of the City Code, was unconstitutionally vague. Three key canons of construction apply to guide the Court's analysis of this argument.

13

First, this Court has long explained that the test for clarity under the Due Process Clause does not require municipalities to write all ordinances with mathematical exactitude. See Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Env't Control, 317 F.3d 357, 366 (4th Cir. 2002) ("because we are 'condemned to the use of words, we can never expect mathematical certainty from our language.'") (Quoting Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Second, it is well-settled that where, as here, an ordinance is enforceable through a purely civil remedy, "[l]ess clarity is required… because the 'consequences of imprecision are qualitatively less severe.'" Manning v. Caldwell for City of Roanoke, 930 F.3d 264, 272 (4th Cir. 2019) (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). Finally, Section 10-85(2) of the City Code should be interpreted consistent with the Supreme Court's "elementary rule… that every reasonable construction must be resorted to in order to save a statute from unconstitutionality." Hooper v. People of State of Cal., 155 U.S. 648, 657, 15 S. Ct. 207, 211, 39 L. Ed. 297 (1895). The District Court's determination that a person of ordinary intelligence could not reasonably be expected to understand the meaning of the term "amplified sound" was incompatible with these canons of interpretation.

The argument advanced by the Plaintiff-Appellee, and accepted by the District Court, appeared to be that the City surely must have intended to only prohibit the use of either *electrically*-amplified sound, or *nonelectronically*-amplified sound, but not both, rendering it impossible to know what was actually intended. Such an argument is incompatible with each of the aforementioned general canons of construction, but also with the specific rule that "[w]ithout some indication to the contrary, general words (like all words, general or not) are to be accorded their full and fair scope. They are not to be arbitrarily limited. This is the general-terms canon." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 101 (2012) (referring to this rule by its Latin designation, "*generalia verba sunt generaliter intelligenda*").[8] Here, the City prohibited the use of all forms of amplified sound within 150-feet of an open school or medical clinic, as demonstrated by the fact that it did not attempt to specifically limit that prohibition to some particular form of amplification.

The Panel considered the preceding arguments regarding the clarity of the term "amplified sound," as well as those that the Plaintiff-Appellee now reiterates based on his preferred reading of <u>Manning</u> and <u>Lytle v. Doyle</u>, 326 F.3d 463 (4th Cir. 2003). Indeed, the Panel Opinion directly engaged with, and explained its rejection of, the Plaintiff-Appellee's reading of <u>Manning</u> and <u>Lytle</u>. <u>Op.</u> at pp.

---

[8] <u>Compare</u> <u>United States v. Hawley</u>, 919 F.3d 252, 256 (4th Cir. 2019) (discussing the inverse canon of interpretation, *expressio unius est exclusio alterius*).

26-28. Because the cogency of those explanations is apparent, and because the

Plaintiff-Appellee offers no new arguments beyond restating his preferred reading

of <u>Manning</u> and <u>Lytle</u>, no further discussion of this aspect of the Panel Opinion is

required.

## **CONCLUSION**

As set forth herein, the Panel Opinion not only complies with the precedents

of this Court and the Supreme Court, but further reaches the only holding that

avoids the creation of a heretofore nonexistent circuit split. For these reasons, the

Petition for Rehearing *en banc* should be summarily denied.

RESPECTFULLY SUBMITTED this the 21st day of August, 2025.


By:     <u>s/Eric P. Edgerton</u>
        Eric P. Edgerton
        N.C. Bar No. 47717
        P.O. Box 7148
        Asheville, NC 28802
        Tele: (828) 259-5610
        <u>eedgerton@ashevillenc.gov</u>
        *Attorney for Defendant-Appellants*

## CERTIFICATE OF COMPLIANCE

This Response complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, signature block, certificates of counsel, addendum, attachments), it contains 3,709 words. This Response complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Times New Roman, on the Google Documents platform.

This the 21st day of August, 2025.

s/ Eric P. Edgerton
Eric P. Edgerton

## CERTIFICATE OF SERVICE

This is to certify that the foregoing *Response in Opposition to Plaintiff-Appellee's Petition for Rehearing En Banc* has been duly served by electronically filing via the Electronic Filing System to:

B. Tyler Brooks
N.C. Bar No. 37604
Law Office of B. Tyler Brooks, PLLC
P.O. Box 10767
Greensboro, N.C.
Telephone: (336) 707-8855
Facsimile: (336) 900-6535
Email: btb@btylerbrookslawyer.com

Nathan W. Kellum
TN BAR #13482; MS BAR # 8813
First Liberty Institute
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117
(901) 684-5485
nkellum@firstliberty.org

Jeffrey C. Mateer
First Liberty Institute
2001 W. Plano Pkwy., Suite 1600
Plano, TX 75075
(972) 941-4444
jmateer@firstliberty.org

This the 21st day of August, 2025.

s/ Eric P. Edgerton
Eric P. Edgerton